**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KEITH LAMONT BURLEY, JR.,            )
                                     )
                Plaintiff,           )        Civil Action No. 1:23-cv-276
                                     )
                                     )
        v.                           )
                                     )        Magistrate Judge Patricia L. Dodge
                                     )
CO FRITZ, CO MOORE, CO BEST,         )
RANDY IRWIN, MAHLMISTER,             )
McDUFFIE, and JAMES R. JENDRYSIK,    )
                                     )
                Defendants.          )

## <u>MEMORANDUM OPINION</u>[1]

Presently before the Court are multiple motions to dismiss that have been brought by Defendant James R. Jendrysik in his official capacity (ECF No. 40), Defendant McDuffie (ECF No. 43), Defendants CO Best, CO Fritz, Randy Irwin, and CO Moore (ECF No. 59) ("the Corrections Defendants"), and Defendants Jendrysik and Mahlmister (ECF No. 61).

### I.    Introduction

Plaintiff Keith Lamont Burley, Jr., an inmate at the State Correctional Institution ("SCI") at Forest, brings this *pro se* civil rights action in which he asserts various claims for damages under 42 U.S.C. § 1983 as well as various state law claims. He also seeks injunctive relief against Defendants Moore, Best, and Mahlmister for the return of his property and against Irwin, Mahlmister, and McDuffie to arrange for various medical treatment at an outside hospital.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

Plaintiff's claims are alleged to arise both during the time he was a pre-trial detainee and after he was convicted and awaiting sentencing on charges including criminal homicide. He was also on parole when charged with criminal homicide, after which he was detained for violating his parole.

## II.    Factual Allegations of the Complaint

On or about January 1, 2022, Plaintiff "gave notification" that he was filing a federal civil action because he was housed at SCI Forest without a commitment order. (ECF No. 11 ¶ 41.) On or about January 26, 2022, Plaintiff was transferred from SCI Forest. (*Id.* ¶ 42.)According to Covid-19 protocol, he was supposed to be quarantined for two weeks before his transfer, but he was not. (*Id.*) While Plaintiff was in the custody of the Lawrence County Sheriff's Department, Defendant Mahlmister, the warden of the Lawrence County Jail, made an agreement with Defendant McDuffie, the warden of the Mercer County Jail, to house Plaintiff in the Mercer County Jail. (*Id.* ¶ 43.)

Plaintiff arrived at the Mercer County Jail on January 26, 2022. At that time, he was negative for Covid-19. (*Id.* ¶ 45.) Soon after, Plaintiff contracted Covid-19 and became ill. (*Id.* ¶ 46.) Plaintiff reported his symptoms to jail personnel, including McDuffie, but he was not given medical treatment. (*Id.* ¶ 47.) Instead, he was sent to the maximum-security housing unit where he remained for 10 months. (*Id.*)

In October 2022, McDuffie and Mahlmister conspired to have Plaintiff sent to the Erie County Prison, where he was immediately "locked down/segregated." (*Id.* ¶¶ 48, 54.) He protested and was informed that he would be returned to SCI Forest. (*Id.* ¶ 48.) However, six days later, he was sent to SCI Mercer and "locked in the hole." (*Id.*) Plaintiff informed the Program Review Committee and Melinda Adams, the Superintendent of SCI Mercer, that he had been sent there in

retaliation for filing grievances and a lawsuit. (*Id.* ¶ 49.) Within 30 days of his arrival, he was returned to SCI Forest. (*Id.*)

Plaintiff was transferred to the Lawrence County Jail four times during 2023. (*Id.* ¶ 50.) Each time, he was "locked down" in the booking area by Mahlmister without explanation and without having committed a disciplinary offense. (*Id.*) He was kept under 24-hour lighting without outside recreation and was not permitted visits from family and friends. (*Id.* ¶ 52. )

On or about August 28, 2023, after Plaintiff's criminal trial, Mahlmister confiscated the street clothes Plaintiff wore to the trial but refused to provide Plaintiff with a property release so that he could send the clothes home. (*Id.* ¶ 59.)

Plaintiff was informed by his counselor on September 5, 2023, that Defendant Jendrysik, a Lawrence County probation officer, was seeking to obtain a release for some of Plaintiff's protected records, including his social and family histories. (*Id.* ¶¶ 10, 13.) The counselor asked Plaintiff to sign a consent form for the release, but he refused. (*Id.* ¶ 14.)

On September 8, 2023, Plaintiff received a misconduct for failing to return a meal tray despite having returned all of them. (*Id.* ¶ 15.)

On September 12, 2023, Defendants Moore and Best seized Plaintiff's personal property including legal books, legal documents, and Plaintiff's writings. (*Id.* ¶ 16.) On the same date, Moore and Best issued a misconduct to Plaintiff for possession of a pre-paid credit card. (*Id.* ¶ 17.) The card had been given to him at the direction of McDuffie. (*Id.* ¶¶ 6, 17.) Also on this date, Moore issued a misconduct to Plaintiff for "flooding" a cell (JD 1009) on August 12, 2023,even though Plaintiff was not housed there at the time. (*Id.* ¶ 23.)

Plaintiff was moved to a new cell (JD 1009) on September 9, 2023. (*Id.* ¶ 20.) Defendant Fritz informed the occupants of neighboring cells about Plaintiff's criminal case, calling him a

baby killer, using a racial slur, and encouraging the other inmates to do the same. (*Id.*) The same date, Fritz issued a false misconduct to Plaintiff for threatening Fritz and his family. (*Id.*) Plaintiff received a disciplinary sanction of 110 days in the Restricted Housing Unit despite the lack of notice or opportunity to be heard. (*Id.* ¶ 22.) While Plaintiff was housed in Cell JD 1009, Fritz denied him food and hygiene supplies. (*Id.* ¶ 25.) This cell is extremely cold, and Plaintiff lacked appropriate clothing and bedding. (*Id.* ¶ 28.) Between September 9, 2023, and September 16, 2023, Plaintiff notified staff by intercom that he needed medical treatment. (*Id.* ¶ 32.)

Plaintiff's counselor learned on September 13, 2023, that Plaintiff would be transferred to Lawrence County Jail. (*Id.* ¶ 33.) Two days later, a registered nurse prepared Plaintiff's transfer health information for Mahlmister. (*Id.* ¶ 34.) The nurse informed Mahlmister that Plaintiff suffered from chronic vision sensitivity deficiencies. (*Id.*)

Fritz issued another false misconduct to Plaintiff on September 16, 2023, moved him to a "hard cell," (JD 1006) and began telling Plaintiff to kill himself. (*Id.* ¶ 24.) During the move to the new cell, Fritz twisted Plaintiff's wrists, breaking one of his fingers. (*Id.* ¶ 26.) Fritz deliberately failed to bring Plaintiff's glasses to his cell, which resulted in Plaintiff suffering from migraine headaches, disorientation, sleep loss, dizziness, and impaired vision. (*Id.* ¶ 27.)

On September 18, 2023, Plaintiff was transferred to Lawrence County Jail. (*Id.* ¶ 35.) He was examined by a nurse who informed him that he would receive an x-ray and an MRI. (*Id.* ¶ 36.) He also spoke to another medical professional who informed him that the doctor would see him on September 21, 2023. (*Id.* ¶ 36.) However, Plaintiff was returned to SCI Forest on September 19, 2023, without having received any medical treatment. (*Id.* ¶ 40.)

III.    **Other Relevant Matters of Public Record**

The Court has reviewed and takes judicial notice of public records related to Plaintiff's criminal history. *See* ECF 62-1; ECF 60 at 3-4.

On July 11, 2019, Plaintiff was arrested and charged with criminal homicide and related offenses. His case was prosecuted in the Court of Common Pleas of Lawrence County. Following his arrest in July 2019, Plaintiff was initially incarcerated in the Lawrence County Jail.

Plaintiff was on parole at the time of his arrest. After a detention hearing, he was detained by the Pennsylvania Board of Probation and Parole ("PBPP") pending disposition of his criminal charges. In July 2020, Plaintiff was transferred to the custody of the Pennsylvania Department of Corrections and incarcerated at SCI Forest. *See Burley v. Parra*, Case No. 2:20-cv-1805-PLD, ECF No. 83 at 1-2. While awaiting trial on the pending criminal homicide charges, he was subsequently lodged at multiple state and county correctional facilities.

Plaintiff was convicted on August 28, 2023, of, *among other things*, murder of the first degree, in the Court of Common Pleas of Lawrence County at docket number CP-37-CR-0000730-2019 and was sentenced to life imprisonment on September 19, 2023.

IV.    **Legal Standards**

A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting

5

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11. Further, in considering a motion to dismiss, the court generally considers only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim when considering the motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citations omitted).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away allegations that are no more than conclusions and thus not entitled to the assumption of truth; (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

6

In ruling on a Rule 12(b)(6) motion, courts generally consider only the complaint, exhibits attached thereto, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014). In addition, the court is not limited to the arguments presented in the motion to dismiss but may sua sponte consider the adequacy of a complaint under the screening provisions of the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"). *See, e.g., Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109 n.11 (3d Cir. 2022) (explaining that the PLRA's screening provisions at 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c) are "applicable throughout the entire litigation process.") (internal quotation and citation omitted); *Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588-89 (W.D. Pa. 2008) (the court may sua sponte rest its dismissal upon a ground not raised in a motion to dismiss under the screening provisions of the PLRA).

Finally, "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). That said, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

## V.    Analysis

Most of Plaintiff's claims are brought under 42 U.S.C. § 1983. The Supreme Court has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal

rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994). *See also Baker*, 443 U.S. at 140; *Graham v. Connor*, 490 U.S. 386, 394 (1989).

A. **Jendrysik's Motion to Dismiss Official Capacity Claims**

Plaintiff brings claims against all of the defendants both in their individual and official capacities. (ECF No. 11 ¶ 11.) Jendrysik argues that the civil rights claims against him in his official capacity are barred by the immunity afforded by the Eleventh Amendment. (ECF No. 42 at 4-5.)

The Eleventh Amendment to the United States Constitution proscribes actions for damages in the federal courts against states, their agencies, and state officials acting within their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985). The Third Circuit has repeatedly held that "Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity." *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008) (citing *Benn v. First Jud. Dist.*, 426 F.3d 233, 241 (3d Cir. 2005)). Because Pennsylvania has not waived its sovereign immunity, and because Congress has not explicitly abrogated immunity through authorizing legislation, the Eleventh Amendment operates as a bar to claims for damages under § 1983 against Jendrysik.

Further, claims against Jendrysik in his official capacity are legally claims against the Commonwealth of Pennsylvania, and the Commonwealth is not a person that can be sued under 42 U.S.C. § 1983, even if the Eleventh Amendment permitted this Court to exercise jurisdiction over the claims. *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991).

At the same time, however, a state official in his official capacity, when sued for injunctive relief, is "a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'" because prospective injunctive relief merely compels compliance with a federal law. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). Because Plaintiff does not seek prospective injunctive relief against Jendrysik, no § 1983 claims against him in his official capacity remain.

Thus, this motion will be granted and Plaintiff's claims against Jendrysik in his official capacity will be dismissed with prejudice.

**B.  Motion to Dismiss of the Corrections Defendants**

1.  Claims brought in Official Capacities

Defendants Irwin, Fritz, Moore, and Best similarly argue that Plaintiff's civil rights claims against them in their official capacities are barred by the immunity afforded by the Eleventh Amendment. "Because the Pennsylvania DOC is a part of the executive department of the Commonwealth of Pennsylvania, its employees share in the Commonwealth's Eleventh Amendment immunity to the extent that they were sued in their official capacities." *Johnson v. Wenerowicz*, 440 Fed. Appx. 60, 62 (3d Cir. 2011). Thus, for the same reasons outlined with respect to the resolution of Jendrysik's motion, they are immune from liability for these claims.

Therefore, all § 1983 claims against Corrections Defendants Best, Fritz, Irwin and Moore in their official capacities, other than those seeking prospective injunctive relief, will be dismissed with prejudice. As discussed below, Plaintiff's requests for injunctive relief against Defendants Best, Irwin, and Moore will be dismissed without prejudice.

2. <u>Claims Against Fritz</u>

Fritz does not move to dismiss the excessive force and conditions of confinement claims Plaintiff brings against him. (ECF No. 60 at 4.) He does, however, move to dismiss Plaintiff's claims against him under the Pennsylvania Constitution and the Pennsylvania Code, as well as Plaintiff's state law tort claims.

a.  Claims under the Pennsylvania Constitution

Plaintiff attempts to allege claims for damages against Fritz under the Pennsylvania Constitution. But as the Correctional Defendants assert, there is no private cause of action for monetary damages for violations of Pennsylvania Constitutional rights. *See Pocono Mt. Charter Sch. v. Pocono Mt. Sch. Dist.*, 442 Fed. Appx. 681, 688 (3d Cir. 2011). *See also Spell v. Allegheny Cnty. Admin.*, 2015 WL 1321695, at *4 (W.D. Pa. Mar. 24, 2015); *Yunik v. Wetzel*, 2014 WL 5426198, at *8 (W.D. Pa. Oct. 22, 2014). In addition, there is no waiver of sovereign immunity for claims based on the Pennsylvania Constitution. *Faust v. Com., Dep't of Revenue*, 592 A.2d 835, 839-40 (Pa. Commw. 1991).

Therefore, these claims will be dismissed with prejudice.

b.  Claims under the Pennsylvania Code

Fritz argues that Plaintiff's claim for violating his rights under 37 Pa. Code § 93.10, a section of the Pennsylvania Administrative Code entitled "Inmate Discipline," must be dismissed. (ECF No. 60 at 6-7.) As he correctly argues, there is no viable cause of action for damages based on a violation of § 93.10. *See Deans v. Floyd*, 2023 WL 3729300, at *7-11 (W.D. Pa. May 30, 2023).

As a result, this claim will be dismissed with prejudice.

c.   Tort claims under Pennsylvania law

As the Corrections Defendants note, Plaintiff appears to assert claims for intentional infliction of emotional distress and assault and battery against Fritz. They contend that Fritz should be dismissed based on his sovereign immunity from claims for intentional torts. (ECF No. 60 at 17-19.)

Under Pennsylvania law, "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. C.S. § 2310. "Exceptions to sovereign immunity are to be narrowly construed." *Dean v. Commonwealth, Dep't of Transp.*, 751 A.2d 1130, 1134 (Pa. 2000). As noted by the Pennsylvania Supreme Court in *Justice v. Lombardo*, 208 A.3d 1057, 1066 (Pa. 2019): "Our intermediate appellate courts have held that these protections shield an employee of a Commonwealth agency from the imposition of liability even for intentional torts."

Pennsylvania courts have held that "intentional tort claims … are not within the narrow exceptions set forth in 42 Pa. C.S. § 8522(b)." *Faust v. Commonwealth Dep't of Revenue*, 592 A.2d 835, 839 (Pa. Commw. 1991). *See also Ioven v. Nestel*, 150 A.3d 571, 574 (Pa. Commw. 2016). "Even where a plaintiff asks for monetary damages against a defendant in his individual capacities, sovereign immunity applies." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 682 (M.D. Pa. 2010) (citation omitted). "Sovereign immunity applies to intentional and negligent torts." *Id.* (citation omitted).

In short, Pennsylvania has not waived its sovereign immunity from intentional torts against state officials. *Tingey v. Gardner*, 827 Fed. Appx. 195, 197 (3d Cir. 2020). Accordingly, these claims will be dismissed with prejudice.

11

3.  <u>Claims Against Moore and Best</u>

Plaintiff also asserts a claim against Moore and Best under the Pennsylvania Constitution, as well as various civil rights claims, including illegal search and seizure and violation of his Fifth Amendment and First Amendment rights. These claims appear to stem from events that allegedly took place on September 12, 2023, when Moore and Best seized his personal property, including his writings, documents related to two active cases, and law books. (ECF No. 11 ¶¶ 16-17.) He alleges that Moore and Best then issued misconducts against him to justify their search and seizure and keep him away from his lawbooks as well as to harass and punish him for his activism in filing grievances and lawsuits.

a.  Claims under the Pennsylvania Constitution

Plaintiff attempts to allege claims for damages against Moore and Best under the Pennsylvania Constitution. As outlined in connection with a similar claim against Fritz, there is no private cause of action for damages under the Pennsylvania Constitution.

Therefore, these claims will be dismissed with prejudice.

b.  Illegal Search and Seizure

The Corrections Defendants move to dismiss the claims Plaintiff brings against Moore and Best under the Fourth Amendment, arguing that the right to be free from unreasonable searches and seizures does not apply to an inmate's cell or personal property, including, but not limited to, legal papers. (ECF No. 60 at 8-9.)

In *Block v. Rutherford*, 468 U.S. 576 (1984), the Supreme Court held that the search of a pretrial detainee's cell by prison officials does not violate the Fourth Amendment or offend principles of due process. *Id.* at 590-91. The United States Court of Appeals for the Third Circuit has explained:

The defendants correctly assert that prisoners do not have a Fourth Amendment right to privacy in their cells. *Hudson v. Palmer*, 468 U.S. 517, 529 (1984). The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration. *Id.* at 527. Mindful that internal security is a chief concern in prisons, the Court recognized that it would be impossible to prevent the introduction of weapons, drugs and other contraband into the premises if prisoners maintained a right of privacy in their cells. *Id.* Therefore, "the Fourth Amendment has no applicability to a prison cell."

*Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001).

Rather, this case is governed by the Fourteenth Amendment, which prohibits states from depriving "any person of life, liberty, or property, without due process of law." Defendants contend that a claim that state officials have deprived a prisoner of personal property does not state a recognizable § 1983 action. The United States Supreme Court has stated that: "the existence of an adequate state remedy to redress property damage inflicted by state officers avoids the conclusion that there has been any constitutional deprivation of property without due process of law within the meaning of the Fourteenth Amendment." *Parratt v. Taylor*, 451 U.S. 527, 542 (1981) (citation omitted), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). It is also not relevant whether the alleged loss of the inmate's property occurred as the result of negligent or intentional conduct. *Hudson v. Palmer*, 468 U.S. 517, 534 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post-deprivation remedy.").

Various courts have concluded that:

Pennsylvania does provide an adequate remedy for inmates whose property has been lost, stolen, or destroyed by prison officials. Inmate grievance procedures, as well [as] the Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. Ann. § 8541-8546, are available to plaintiff, and provide him with adequate postdeprivation remedies. *See Iseley v. Horn*, 1996 WL 510090, at *6 (E.D. Pa. [Sept. 3, 1996)]); *Rambert v. Durant*, 1996 WL 253322, at *2 (E.D. Pa. [May 10, 1996]); *Ramos v. Vaughn*, 1995 WL 386573, at *8 (E.D. Pa. [June 27, 1995])), *aff'd mem.*, 85 F.3d

> 612 (3d Cir. 1996) (finding Pennsylvania inmate grievance procedures to be a
> meaningful postdeprivation remedy for the loss of property by a corrections
> officer); *see also Murray v. Martin*, 720 F. Supp. 65 (E.D. Pa. 1989) (noting that a
> prisoner alleging the intentional theft of his property by a corrections officers may
> pursue a civil damage action pursuant to the Political Subdivision Tort Claims Act).

*Rossiter v. Andrews*, 1997 WL 137195, at *4 (E.D. Pa. Mar. 25, 1997). *See also Monroe v. Beard*,

536 F.3d 198, 210 (3d Cir. 2008) (finding DC-ADM 804 to be an adequate remedy).

Accordingly, Plaintiff's claims under the Fourth Amendment and Fourteenth Amendment

against Moore and Best will be dismissed with prejudice.

### c.  Fifth Amendment

Plaintiff also purports to bring a claim under the Fifth Amendment. As the Corrections

Defendants correctly argue, however, the due process limitations of the Fifth Amendment only

restrict federal government action, not the actions of state officials. *Ludwig v. Pennsylvania State*

*Police,* 2024 WL 757126, *3 (W.D. Pa. 2024). *See also Davis v. Oberlander,* 2024 WL 811696,

*2 n. 2 (W.D. Pa. 2024).

Thus, Plaintiff's Fifth Amendment claim will be dismissed with prejudice.

### d.  First Amendment Retaliation

Plaintiff also asserts that Moore and Best acted in retaliation for his filing of grievances

and a lawsuit. (ECF No. 11 at ¶ 66.) To succeed on a claim for retaliation under the First

Amendment, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action

sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3)

a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v.*

*Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir.

2003)).

The filing of a grievance or a lawsuit is constitutionally protected conduct. *Scutella v. Erie Cty. Prison*, 2024 WL 3014828, *7 (W.D. Pa. May 23, 2024). Further, it is plausible that confiscation of all of one's personal property would deter a person of ordinary firmness from exercising his constitutional rights. Thus, those two elements have been sufficiently alleged.

As to the third element, however, Plaintiff has failed to allege any facts to establish causation. While he asserts that Moore and Best seized his property in retaliation of his filing of "grievances and lawsuits," he identifies none of these grievances, state whether either defendant was referenced in any of them or even had knowledge that he had asserted grievances. While he references one lawsuit filed in January 2022, this was well before the seizure of his property more than a year later. Thus, the Complaint fails to plead a temporal connection between his protected activity and Defendants' actions. *See Shaner v. Synthes (USA)*, 204 F.3d 494, 505 (3d Cir. 2000) ("the passage of a long period of time between protected activity and an alleged retaliatory action weighs against a finding of a causal link where there is no evidence of retaliatory animus during the intervening period.")

Therefore, the retaliation claim against Moore and Best will be dismissed without prejudice.

### 4. Claims Against Irwin

#### a. Denial of Medical Care

Irwin is the Superintendent of SCI Forest. (ECF No. 11 ¶ 4.) Plaintiff appears to claim that Irwin was deliberately indifferent to his medical needs based on Plaintiff's contraction of Covid-19. Without any elaboration, Plaintiff merely claims that Irwin failed to protect him from contracting it. The Corrections Defendants argue that Plaintiff has failed to allege Irwin's personal involvement in this alleged constitutional violation. (ECF No. 60 at 12-14.)

In a claim under 42 U.S.C. § 1983, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g.*, *id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, supervisor-defendants cannot be held liable for every illegal act that takes in a correctional facility. They are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v.*

16

*Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

The Complaint includes no factual allegations that might demonstrate the personal involvement of Irwin in the denial of medical treatment. Without more, Plaintiff's allegation that Irwin failed to protect him from contracting Covid-19 is not enough to state a civil rights claim.

Therefore, this claim will be dismissed without prejudice.

b. Equal Protection

Plaintiff asserts that Irwin collaborated with Mahlmister and McDuffie (the latter two of whom will be addressed separately in this opinion) to transfer him numerous times and treat him differently than other inmates. He claims that these actions violate his rights under the Equal Protection Clause. (ECF No. 11 ¶ 67.)[2]

---

[2] In the body of the Complaint, but not in the "Legal Claims" section, Plaintiff references 42 U.S.C. § 1985(3) as an additional basis for a claim against these defendants for the repeated transfers. (ECF No. 11 ¶ 63.) To state a claim under § 1985(3), the plaintiff must allege, *among other things*, a conspiracy for the purpose of depriving a person or class of persons of the equal protection of the laws. *Davis v. Wigen*, 82 F.4th 204, 214 (3d Cir. 2023) (citing *United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828-29 (1983)). To allege deprivation of equal protection of the laws, the plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Davis*, 82 F.4th at 214 (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The Complaint contains no such allegations. Thus, if Plaintiff attempted to assert a claim under § 1985(3), he has failed to do so against any of the defendants.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (Equal Protection Clause prohibits a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification).

Because Plaintiff has not alleged that he is a member of a protected class, it is possible that he is alleging that he is a "class of one." To make out an equal protection claim as a "class of one," Plaintiff must allege: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Phillips v. County of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008).

Plaintiff has failed to meet these elements. His bald assertion that these defendants treated him "differently than other inmates, " falls well short of establishing a plausible claim for an equal protection violation. Simply put, the Complaint does not plead any facts that support his claim that he was intentionally treated differently than other inmates who were similarly situated. Indeed, the Court notes that in an order issued by the Court of Common Plea of Lawrence County, Mahlmister was ordered to make arrangements for Plaintiff to be transferred from SCI Forest to the Mercer County Jail. This was for the purpose of making him available to his criminal defense counsel and for the progress of his criminal case. (ECF No. 62-2.) The criminal docket sheet for Plaintiff's case reflects that the trial court ordered additional transfers as well. (ECF No. 62-1.)

18

Finally, other than bald conclusory statements, Plaintiff does not allege that it was Irwin's decision to transfer Plaintiff or to bring about any of the transfers about which he complains. Therefore, he has also failed to show that Irwin was personally involved in his transfers, which, as discussed above, is a necessary element to state a claim against him.

For these reasons, the equal protection claim against Irwin will be dismissed without prejudice.

### 5.   Due Process Claim Against Fritz, Moore, and Best

Plaintiff claims that Fritz, Moore, and Best issued four false misconducts against him. While unclear, Plaintiff appears to assert that he did not receive his due process rights under the Fourteenth Amendment because he had no notice of a hearing or an opportunity to be heard in connection with some or all of the misconducts. First, Plaintiff fails to allege that any of these defendants had a role in or the responsibility for providing notice to him or arranging for or conducting a hearing on any of these misconducts. Even assuming that his allegations about lack of notice and an opportunity to be heard are true, in the absence of any relevant conduct by Fritz, Moore, or Best, he has failed to state a claim against them for lack of procedural due process.[3]

Therefore, the due process claims related to false misconducts will be dismissed without prejudice.

### C.   **Motion to Dismiss of Mahlmister and Jendrysik**

Plaintiff alleges that Mahlmister and Jendrysik violated his rights and conspired to violate his rights because they sought "privileged information and transferred the plaintiff to advance the

---

[3] Because Plaintiff has failed to allege that these defendants deprived him of due process, it is unnecessary to address whether Plaintiff has pleaded sufficient facts to support a liberty interest that protected by the Fourteenth Amendment.

private interest of a judge or judges of the Lawrence County Common Pleas Court." (ECF No. 11 ¶ 68.)

As it relates to Jendrysik, who is a Lawrence County probation officer, Plaintiff claims that Jendrysik sought Plaintiff's records from his counselor, but Plaintiff refused to consent to the release of his records. This was after Plaintiff's conviction on homicide charges. These allegations fail to represent any violation of Plaintiff's rights or of any of the statutes cited by Plaintiff. Plaintiff admits that he refused consent and does not allege that Jendrysik obtained any records. Thus, his civil rights were not violated. Nor are there any facts in the Complaint that Jendrysik had any role in Plaintiff's transfers to and from various correctional facilities, nor does Plaintiff suggest how a county probation officer would have had any authority to do so.

Plaintiff has also failed to plead facts to show that his transfers were orchestrated by Mahlmister or that he conspired with Jendrysik to do so. To assert a conspiracy claim under § 1983, a plaintiff must allege that persons acting under color of state law "reached an understanding" to deprive him of his constitutional rights. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293-94 (3d Cir. 2018) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)). A plaintiff who asserts a conspiracy claim must provide some facts that support the existence of an agreement to deprive him of his rights as well as concerted action to advance the conspiracy. *Id.* Other than bald conclusory statements, there are no allegations in the Complaint that support the existence of any such agreement, or that any action taken by either of these defendants was to violate of Plaintiff's civil rights.

Indeed, the public record reflects that Plaintiff was transferred at various times between several correctional facilities because of the issuance of court orders. While Plaintiff suggests that transfers were made to advance the private interests of Lawrence County judges, this is neither

plausible given Plaintiff's pending prosecution for homicide, nor does the Complaint include any factual allegations to support Plaintiff's conclusory claim any Lawrence County judge had some private interest in his transfer. Moreover, the only transfer facilitated by Mahlmister was Plaintiff's transfer from SCI Forest to the Mercer County Jail, and this was accomplished pursuant to a court order issued by Lawrence County Judge Motto. Thus, these claims against Jendrysik and Mahlmister will be dismissed.

Plaintiff also alleges that Mahlmister failed to protect him against contracting Covid-19. (ECF No. 62 at 6-7). He also asserts that injuries to his wrist and finger and breathing complications were not treated at the Lawrence County Jail. (*Id.*)

As to the Covid-19 portion of the claim, Plaintiff fails to allege any facts that connect Mahlmister to his contraction of the virus. Plaintiff alleges that Mahlmister, the Warden of the Lawrence County Jail, made an "administrative decision" to house Plaintiff in the Mercer County Jail. He claims that before he was transferred from SCI Forest to the Mercer County Jail, he was supposed to be quarantined for two weeks because of the pandemic.[4] That said, Plaintiff does not allege in the Complaint that the alleged failure to place him in quarantine at SCI Forest prior to his transfer was the responsibility of Mahlmister.[5] Indeed, it is not plausible nor is it pleaded that the warden of the Lawrence County Jail had the authority to direct the activities and decisions of corrections officials at SCI Forest.

---

[4] Contrary to Plaintiff's implication that the lack of quarantine caused him to contract Covid, such measures are to protect the general population of the institution to which an inmate is being transferred to prevent the spread of Covid, not to protect the transferred inmate.
[5] While Plaintiff suggests in his brief in opposition (ECF No. 66 at 4) that Mahlmister caused Plaintiff to contract Covid-19 at the Mercer County Jail because he sent Plaintiff there without following quarantine protocol, this allegation is not in the Complaint.

On January 26, 2022, Plaintiff was transferred from SCI Forest to the Mercer County Jail, where he tested Covid-negative upon his arrival. (ECF No. 11 ¶¶ 41-42, 45.) "Shortly thereafter," Plaintiff "caught Covid-19 from staff or inmates." (*Id.* ¶ 46.) Thus, as Plaintiff acknowledges, he contracted Covid after his arrival at the Mercer County Jail, and Mahlmister had no role or involvement in his housing or medical care at that facility. As a result, this claim will be dismissed.

As to Plaintiff's claims about the failure to treat injuries to his wrists and finger,[6] the Complaint alleges that these injuries occurred on September 16, 2023, at the Mercer County Jail. (*Id.* ¶ 26.) On September 18, 2023, Plaintiff was transferred to the Lawrence County Jail, where he was examined by two medical professionals, who informed him that he would be receiving follow-up tests and meeting with a doctor on September 21, 2023. (*Id.* ¶ 36.) However, Plaintiff was transferred back to SCI Forest on September 19, 2023, before the scheduled treatment could take place. (*Id.* ¶ 40.)

Even if assumed for purposes of a motion to dismiss that these injuries constituted a serious medical need, Plaintiff's allegations do not establish a plausible claim that Warden Mahlmister was deliberately indifferent to Plaintiff's medical needs during the relevant two days that he was in the custody of the Lawrence County Jail. First, Plaintiff does not allege that Mahlmister knew or should have known of Plaintiff's medical status. Moreover, Plaintiff was seen by medical professionals during his brief stay. Thus, even if Plaintiff had alleged that Mahlmister knew about a need for medical treatment, "[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*

---

[6] Although Plaintiff mentions "breathing difficulties" in his brief in opposition, the allegations in the Complaint indicate that he "struggled with breathing" related to his Covid infection. Mahlmister had no responsibility for Plaintiff's medical care at the Mercer County Jail.

*v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).[7] Moreover, Plaintiff has failed to plead any facts that show the personal involvement of Mahlmister in his transfer from the Lawrence County Jail before he could receive the additional medical care that had been scheduled.

Because there is no basis for a claim against Mahlmister for deliberate indifference to a serious medical need, this claim will be dismissed without prejudice.

Plaintiff also alleges that his civil rights were violated when he was placed on administrative lockdown without a hearing during his incarcerations at the Lawrence County Jail. As reflected in the public record, however, his placement during any one of the four periods in which he was lodged at this facility was only for a few days each time. He fails to state a claim that his due process rights were violated during these brief stints because he has pleaded no facts that this resulted in an atypical and significant hardship in relation to ordinary prison life. *See Thomas v. Rosemeyer,* 199 Fed. Appx. 196, 197 (3d Cir. 2006).

For the same reasons outlined previously with respect to the equal protection claim, it will be dismissed without prejudice.

Thus, Plaintiff's claims against Mahlmister related to his administrative lockdown will be dismissed without prejudice.

Although it is unclear if Plaintiff is making a claim against Mahlmister for damage to his property, this claim is not sustainable for the same reasons outlined earlier in this opinion and will be dismissed with prejudice.

---

[7] Plaintiff was convicted on August 28, 2023, of, *inter alia*, murder of the first degree, and sentenced on September 19, 2023. At that time, he was also being detained as parole violator. As such, his claim for deliberate indifference to a serious medical need would be analyzed under the Eighth Amendment. *Mattern v. City of Sea Isle*, 657 Fed. Appx. 134, 138 n.5 (3d Cir 2016). Thus, the Court appropriately applies a subjective standard to Plaintiff's deliberate indifference claim.

Finally, as Plaintiff is no longer lodged at the Lawrence County Jail, his request for an injunction directed to Mahlmister to arrange for outside medical care is moot and will be dismissed with prejudice.

### D.  Motion to Dismiss of McDuffie

Plaintiff claims that McDuffie's deliberate indifference caused him to contract Covid-19 at the Mercer County Jail and then sustain harm as he was not given any treatment. (ECF No. 11 ¶¶ 64, 67.) In his motion, McDuffie, the Warden at the Mercer County Jail, contends that Plaintiff's claim against him for deliberate indifference based on Plaintiff's contraction of Covid-19 is both legally and factually deficient. (ECF No. 44 at 8-10.) McDuffie points to Third Circuit decisions about the difficulty in showing that prison staff were deliberately indifferent in failing to eliminate all risk of prisoners contracting Covid-19. (*Id.* at 9-10) (citing, *among other things*, *Hope v. Warden York Cty. Prison*, 972 F.3d 310 (3d Cir. 2020)). McDuffie also argues that Plaintiff fails to allege that McDuffie personally disregarded a risk to Plaintiff or failed to implement sufficient policies that aimed to prevent the spread of Covid-19. (ECF No. 44 at 10.)

Plaintiff's allegations that McDuffie knew that Covid-19 "was in existence" and that Plaintiff was supposed to be quarantined upon his transfer are unavailing. Covid-19 was prevalent throughout the country, including inside correctional facilities, and Plaintiff has not alleged that McDuffie failed to implement Covid-related policies. Thus, insofar as this claim is based on Plaintiff contracting Covid-19, it will be dismissed.

At the same time, however, Plaintiff also alleges that once he contracted Covid, he did not receive any medical treatment despite informing Mercer County Jail personnel, including McDuffie, that he was experiencing difficulty breathing, loss of taste and smell, and blood in his urine. (ECF No. 11 ¶¶ 46-47, 67.) McDuffie has not responded to this claim, and Plaintiff has

alleged sufficient facts that could support a plausible claim of deliberate indifference to a serious medical need based on the lack of treatment. Accordingly, this portion of the claim will not be dismissed.

As it relates to Plaintiff's claim that McDuffie conspired with Mahlmister to have Plaintiff transferred to the Erie County Prison, the Complaint fails to plead facts to support each element of a conspiracy claim. As earlier discussed, a claim of conspiracy must be supported by facts that show the existence of an agreement or understanding between conspirators to violate a person's civil rights. Here, Plaintiff makes no more than sweeping conclusions about a conspiracy without any factual support. That is inadequate to support a conspiracy claim.

Likewise, Plaintiff's First Amendment retaliation claim against McDuffie also fails. While Plaintiff claims that he was retaliated against because he filed grievances and complained about his conditions of confinement, he fails to allege that McDuffie was aware of his grievances or complaints. Moreover, he has not pleaded any facts that show that his constitutionally protected conduct, assuming it occurred, was a substantial factor in his transfer.

For the same reasons outlined previously with respect to the equal protection claim, it will be dismissed without prejudice.

Finally, as Plaintiff is no longer lodged at the Mercer County Jail, his request for injunctive relief directed to McDuffie is moot.

**E.** **Amendment**

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment, unless an amendment would be inequitable or futile. *Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

The Court cannot conclude that it would be futile or inequitable to permit Plaintiff to file an amended complaint to remedy the deficiencies identified herein for those claims that have not been dismissed with prejudice.

**VI.    Conclusion**

For these reasons, the pending motions to dismiss will be disposed of as follows:

1.  The Motion to Dismiss filed by Jendrysik (ECF No. 40) will be granted. The claims against Jendrysik in his official capacity will be dismissed with prejudice.

2.  The Motion to Dismiss filed by the Corrections Defendants (ECF No. 59) will be granted. The following claims will be dismissed with prejudice:

        a.      All claims against Best, Fritz, Irwin, and Moore in their official capacities, other than any request for prospective injunctive relief, which will be denied without prejudice;

        b.      All claims against Moore and Best under the Pennsylvania Constitution;

        c.      All claims against Fritz under the Pennsylvania Constitution and the Pennsylvania Code, and all state law claims;

        d.      The illegal search and seizure claims under the Fourth and Fourteenth Amendment against Moore and Best;

        e.      The Fifth Amendment claim against Moore and Best.

The remaining claims against the Corrections Defendants will be dismissed without prejudice.

3.  The Motion to Dismiss filed by Jendrysik and Mahlmister (ECF No. 61) will be granted. All claims against them will be dismissed without prejudice. Plaintiff's request for injunctive relief related to outside medical care will be dismissed as moot.

4.  The Motion to Dismiss of McDuffie (ECF No. 43) will be granted in part and denied in part. The equal protection claim and the deliberate indifference claim about Plaintiff's contraction of Covid-19 will be dismissed without prejudice. Plaintiff's request for injunctive relief related to outside medical care will be dismissed as moot. The motion will be denied with respect to the deliberate indifference claim regarding to the lack of treatment Plaintiff received for Covid-19.

If Plaintiff chooses not to file an amended complaint, this case will proceed only as to: (1) the claims of excessive force and conditions of confinement against Fritz; and (2) the deliberate indifference claim against McDuffie concerning the denial of medical treatment for Covid-19.

Appropriate Orders follow.


Dated:  December 11, 2024                        BY THE COURT:


                                                 /s/ Patricia L. Dodge
                                                 PATRICIA L. DODGE
                                                 United States Magistrate Judge