**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KEITH LAMONT BURLEY, JR.,      )
                                   )
          Plaintiff,        )     Civil Action No. 1:23-cv-276
                                   )
                                   )
         v.               )
                                   )     Magistrate Judge Patricia L. Dodge
                                   )
CO FRITZ, and McDUFFIE,       )
SUPERINTENDENT/WARDEN,     )
                                   )
          Defendants.    )

## <u>MEMORANDUM OPINION</u>[1]

Presently before the Court are separate motions for summary judgment by Defendant McDuffie (ECF No. 115) and Defendant CO Fritz (ECF No. 118).

## I.    Relevant Procedural History

Plaintiff Keith Lamont Burley, Jr., an inmate at the State Correctional Institution at Coal Township, brought this *pro se* civil rights action under 42 U.S.C. § 1983. Plaintiff was convicted on August 28, 2023, of, *inter alia*, murder of the first degree, in the Court of Common Pleas of Lawrence County. He was sentenced to life imprisonment on September 19, 2023.

Plaintiff commenced this action in 2023. In the operative Complaint, he brought claims against ten defendants. (ECF No. 11.) Following disposition of Defendants' motions to dismiss, the sole remaining claims are: (1) a deliberate indifference claim against McDuffie, the warden of the Mercer County Jail, for denial of medical treatment for Covid-19; and (2) claims of

---

[1]  In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

excessive force and conditions of confinement against Fritz, a corrections officer at the State Correctional Institution at Forest. (ECF No. 83.)

The claim against McDuffie arose in January of 2022, when Plaintiff was housed at the Mercer County Jail as a pre-trial detainee. Plaintiff's claim against Fritz relates to matters that occurred in September 2023, when Plaintiff was housed at SCI Forest as a convicted detainee awaiting sentencing. During these periods, however, he was also being detained for violation of his parole. Because the precise nature of his parole status at the relevant time periods is unclear, and because pretrial detainees generally enjoy greater constitutional protections than sentenced prisoners, the Court will assume that Plaintiff was a pretrial detainee for purposes of these motions.

McDuffie filed his Motion for Summary Judgment on July 3, 2025, supported by a Brief and a Concise Statement of Material Facts. (ECF Nos. 115-117.) Plaintiff filed a Brief in Opposition. (ECF No. 133.)

Fritz also filed his Motion for Summary Judgment on July 3, 2025, supported by a Brief, a Concise Statement of Material Facts, and an Appendix. (ECF Nos. 118-121.) Plaintiff filed a Brief in Opposition. (ECF No. 132.)

Thus, both motions are ripe for consideration.

## II.    Factual Background

### A.    McDuffie[2]

Plaintiff arrived at the Mercer County Jail on January 26, 2022. (ECF No. 117 ¶ 1; ECF No. 133 at 3 ¶ 1.) At that time, he tested positively for Covid-19 and was informed of the test

---

[2] Other than as noted, the facts referenced here are undisputed.

results. (ECF No. 117 ¶¶ 6, 7; ECF No. 133 at 3 ¶¶ 6, 7.) That evening, Plaintiff experienced difficulty breathing, which he described as a "weight on [his] chest" while lying on his back. (ECF No. 117 ¶¶ 8-9; ECF No. 133 at 3 ¶¶ 8-9.) He also had pain in his back. (ECF No. 117 ¶ 9; ECF No. 133 at 3 ¶ 9.) This pain lasted approximately 12 to 24 hours. (ECF No. 117 ¶ 10; ECF No. 133 at 3 ¶ 10.) On one occasion, Plaintiff had discolored urine. (ECF No. 117 ¶ 11; ECF No. 133 at 3 ¶ 11.) He also experienced loss of taste and smell for approximately two to three months. (ECF No. 117 ¶ 12; ECF No. 133 at 3 ¶ 12.)

Plaintiff first reported these symptoms to two corrections officers and two nurses. (ECF No. 117 ¶¶ 14-16; ECF No. 133 at 3 ¶¶14-16.) He also discussed his symptoms with McDuffie. (ECF No. 117 ¶ 17; ECF No. 133 at 3 ¶ 17.) According to Plaintiff, when he and McDuffie discussed these issues, McDuffie told him that he decided to keep him confined to the H unit. (ECF No. 115-2 at 7). It was Plaintiff's belief that McDuffie did so in order to quarantine those with Covid-19 so that it would not spread throughout the jail. (*Id.*)[3]

Plaintiff was seen by a medical doctor the day after he tested positive. (ECF 115-2 at13.) He was offered Gatorade and vitamins by the medical staff.[4] (ECF No. 117 ¶ 22; ECF No. 133 at 3 ¶ 22.) He was also provided education for the Covid-19 protocol regarding isolation, medicine, and care. (ECF No. 117 ¶ 38; ECF No. 133 at 3 ¶ 38.)As plaintiff testified, he is not claiming that he was not offered any type of medical treatment, but since he has obsessive compulsive

---

[3] Plaintiff made these statements under oath during his deposition. Thus, his subsequent unverified denial of these facts in his response to McDuffie's Concise Statement of Material Facts must be disregarded. He also admits that he has no knowledge of what steps were taken to prevent the spread of Covid-19 at the Mercer County Jail. (ECF No. 133 at 3 ¶ 18.) Further, he does not provide any evidence for his allegation that he needed hospitalization and a ventilator at that time.

[4] Plaintiff disputes that this represented medical treatment.

disorder, he was reluctant to and refused to take what was offered to him. (ECF No. 115-2 at 8, 9, 14.) In fact, he doesn't take any medications. (*Id.* at 9.)

Daily assessments of Plaintiff were conducted by medical personnel. (ECF No. 115-2 at 14.) He had no recurrent symptoms. (*Id.*) Plaintiff was seen by multiple nurses on several occasions while he was Covid-19 positive. (ECF No. 117 ¶ 20; ECF No. 133 at 3 ¶ 20.) He represents that he told nurses that he should be taken to an outside facility for medical treatment but did not express this to McDuffie.[5] (ECF 115-2 at 8, 9.) He believed that he needed a ventilator and to be hospitalized. (ECF No. 133 at 3 ¶¶ 26-27.) Plaintiff also agreed under oath that McDuffie is not a medical expert and not the person to provide medical treatment. (ECF 115-2 at 10.)

In an Inmate Request Form dated January 31, 2022, Plaintiff stated:

In the same sense a person files a grievance when things go wrong, I file compliments when things go right. Medical has been prompt and very professional. I wanted to thank you all for your patience in hearing and addressing my concerns about covid. THANK YOU ALL!

(ECF No. 115-3.)

Plaintiff did not file a grievance with regard to deliberate indifference to his medical care at the Mercer County Jail. (ECF No. 117 ¶ 42; ECF No. 133 at 3¶ 42.)

**B.    Fritz**

In his verified Complaint, Plaintiff alleged that he was moved to cell JD 1009 at SCI Forest on September 9, 2023. (ECF No. 11 ¶ 20.) While Plaintiff was housed in JD 1009, he

---

[5] Despite this sworn testimony, Plaintiff claims in his response to the Concise Statement of Material Facts that he told McDuffie he needed outside medical treatment. Even if accepted as true, however, there is no evidence to support Plaintiff's claim that he required outside medical treatment.

4

claims that Fritz denied him food and hygiene supplies. (*Id.* ¶ 25.) JD 1009 is extremely cold, and Plaintiff was without appropriate clothing and bedding. (*Id.* ¶ 28.)

Plaintiff further alleges in the Complaint that on September 16, 2023, Fritz moved Plaintiff to a "hard cell" (JD 1006). (*Id.* ¶ 24.) During the move to the new cell, Fritz twisted Plaintiff's wrists, breaking one of his fingers. (*Id.* ¶ 26.) Fritz deliberately failed to bring Plaintiff's glasses to JD 1006, which resulted in Plaintiff suffering from migraine headaches, disorientation, sleep loss, dizziness, and impaired vision. (*Id.* ¶ 27.)

As the parties agree, Plaintiff filed three grievances between September 9, 2023, and October 6, 2023. (ECF No. 120 ¶ 1; ECF No. 132 at 2 ¶ 1.)[6]

In Grievance No. 1053112, Plaintiff alleges that several corrections officers, including Fritz, physically assaulted him. (ECF No. 120 ¶ 3; ECF No. 132 at 2 ¶ 3.) Plaintiff appealed the denial of this grievance to the facility manager but did not pursue final review by the Secretary's Office of Inmate of Grievances and Appeals ("SOIGA") thereafter. (ECF No. 120 ¶ 4; ECF No. 132 at 2 ¶ 4.)

In Grievance No. 1054353, Plaintiff alleged that several corrections officers, including Fritz, deprived him of hygiene items and food. (ECF No. 120 ¶ 5; ECF No. 132 at 2 ¶ 5.) Plaintiff did not appeal the denial of this grievance to the facility manager. (ECF No. 120 ¶ 7; ECF No. 132 at 2 ¶ 7.)

## III.    Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[6] Plaintiff did not make any allegations against Fritz in Grievance No. 1504445. (ECF No. 120 ¶ 6; ECF No. 132 at 2 ¶ 6.)

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine, material dispute and an entitlement to judgment. *Id.* at 323. This showing does not necessarily require the moving party to disprove the opponent's claims. Instead, this burden may often be discharged simply by pointing out for the court an absence of evidence in support of the non-moving party's claims. *Id.*

Once the moving party has met their initial burden, then the burden shifts to the non-moving party to demonstrate, by affidavit or other evidence, "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A non-moving party must "go beyond the pleadings" and show probative evidence creating a triable controversy. *Celotex*, 477 U.S. at 324. An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler Cty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g.*,

6

*Barnett v. NJ Transit Corp.*, 573 Fed. Appx. 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories . . . sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 Fed. Appx. 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law."); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (*pro se* plaintiffs "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.")

## IV.    Analysis

### A.    McDuffie

In support of his Motion for Summary Judgment, McDuffie argues, among other things, that the undisputed facts establish that he was not deliberately indifferent to Plaintiff's serious medical needs. (ECF No. 116 at 3-6.)[7] He is correct.

To state a claim that a defendant delayed or denied medical care, a plaintiff must allege (1) a serious medical need and (2) that the defendant was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). For a pretrial detainee, whether the defendant was deliberately indifferent is an objective, not subjective, inquiry. *Conley-Reifer v. Butler Cty. Prison*, Civ. A. No. 23-1804, 2024 WL 5347837, at *9 (W.D. Pa. Nov. 12, 2024). "[M]ere disagreement between the prisoner and medical personnel over the proper course of treatment"

---

[7] McDuffie also argues that Plaintiff failed to exhaust his administrative remedies. However, Plaintiff claims that he was unable to file a grievance as the forms were not available on the housing unit. (ECF No. 133 at 6 ¶ 42.) Thus, while it is uncontroverted that Plaintiff failed to grieve his complaints about McDuffie, there is a genuine issue of material fact about whether the grievance process was available to him. As a result, Court cannot grant summary judgment on this basis.

falls short of establishing deliberate indifference. *Montanez v. Price*, 125 F.4th 127, 141 (3d Cir. 2025).

In a claim under 42 U.S.C. § 1983, a plaintiff must plead a defendant's personal involvement in the alleged deprivation of the constitutional right. *See, e.g.*, *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). That is because, as stated in the text of § 1983 itself, only a person who "subjects, or causes to be subjected" another person to a civil rights violation can be held liable under § 1983. Thus, each defendant is liable only for his or her own conduct. *See, e.g.*, *id.; see also Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Barkes v. First Correctional Med.*, 766 F.3d 307, 316 (3d Cir. 2014) (rev'd sub. nom. on other grounds 575 U.S. 822 (2015)); *C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation or approved of it.") (citing *C.H. v. Oliva*, 226 F.3d 198, 201-02 (3d Cir. 2000) (en banc)).

The doctrine of respondeat superior, which makes an employer or supervisor automatically responsible for the wrongdoing of its employees, does not apply under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Rode*, 845 F.2d at 1207. For that reason, a supervisor-defendant cannot be held liable for every illegal act that takes in a correctional facility. They are only liable for their own conduct.

The Court of Appeals has identified two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates. First, liability may attach if the supervisor, "with deliberate indifference to the consequences, established and maintained a

policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190 (3d Cir. 1995)). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.2d at 1208.

Plaintiff does not allege that McDuffie established any policy, practice, or custom that violated his civil rights. Rather, he alleges that McDuffie was deliberately indifferent to Plaintiff's serious medical needs because he knew of and acquiesced in the denial of medical care to Plaintiff.

Even assuming arguendo that Plaintiff's Covid-19 symptoms, many of which lasted less than 24 hours, represented a serious medical need, the undisputed facts confirm that Plaintiff was provided with medical evaluation and care for his symptoms. And "[i]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

It is uncontroverted that Plaintiff was seen by medical personnel during his confinement in the Mercer County Jail. Plaintiff was seen by a physician the day after he tested positive. By then, many of his symptoms had abated. He declined the offer of vitamins or aspirin by medical personnel because it is his practice not to take any medications. He received daily assessments by

medical personnel and had no recurrent symptoms.[8] Nonetheless, he believed he should have been taken to an outside facility for treatment, and that his treatment should have included an MRI and a ventilator. There is no evidence that Plaintiff required a ventilator, an MRI, or any other treatment outside of the jail. Simply put, a mere disagreement with medical personnel on the proper course of treatment does not establish deliberate indifference.

Moreover, Plaintiff's sworn testimony refutes any claim of deliberate indifference on the part of McDuffie. As Plaintiff admits, McDuffie is not a medical expert or qualified to render medical opinions or treatment. Plaintiff discussed his symptoms with McDuffie after he tested positive for Covid-19, and McDuffie made the decision to keep him in isolation. Thereafter, Plaintiff received medical assessments and recommendations for treatment. There is no evidence that McDuffie was personally involved in these medical assessments and recommendations, or indeed, was even aware of them. Plaintiff admitted under oath that he did not tell McDuffie of his belief that he needed treatment at an outside facility. Even if he had done so, however, or otherwise discussed with McDuffie his disagreement with his medical treatment at Mercer County Jail, there is no evidence that McDuffie was not reasonably justified in relying on the treatment decisions of the jail's medical personnel.

Thus, an objective evaluation of the record evidence conclusively establishes that Plaintiff's claim that McDuffie was deliberately indifferent to a serious medical need is without merit. McDuffie was not personally involved in his medical treatment. Moreover, to the extent that he had any knowledge of the treatment Plaintiff received by medical personnel, Plaintiff's

---

[8] During this time, Plaintiff complimented medical personnel for their professionalism and addressing his concerns about Covid-19.

mere disagreement about the proper course of his medical treatment falls far short of establishing a civil rights claim against McDuffie.

Thus, McDuffie is entitled to summary judgment in his favor on Plaintiff's claim against him.

**B.**     **Fritz**

**1.**     **Excessive Force**

Fritz first argues that he is entitled to summary judgment on the excessive force claim because Plaintiff failed to exhaust his administrative remedies with regard to this claim. (ECF No. 119 at 3-6.) As discussed below, Fritz is correct.

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997(e)(a). The Supreme Court has held that prisoners must exhaust their administrative remedies before bringing suit. *Woodford v. Ngo*, 548 U.S. 81 (2006). The Court has also held that the PLRA requires "proper exhaustion," that is, exhaustion as set forth in the procedures described. *Id.*

Failure to exhaust available administrative remedies is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As such, the defendant has the burden of pleading and proving that the prisoner failed to exhaust available administrative remedies. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002). Importantly, the prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill v. Gillis*, 372 F.3d 218, 230-31 (3d Cir. 2004) ("prison grievance procedures supply the yardstick for measuring procedural

default."). Thus, the procedural requirements for exhaustion in a given case "are drawn from the policies of the prison in question rather than from any free-standing federal law." *Shifflett v. Korszniak*, 934 F.3d 356, 364 (3d Cir. 2019) (citing *Spruill*, 372 F.3d at 231).

The DOC's relevant inmate grievance system is set forth in DC-ADM 804. The DOC has adopted a three-part grievance process that inmates must follow. After a grievance is filed, it is subject to an initial review by a correctional official. If dissatisfied with the results of the initial review, an inmate must then appeal to the Facility Manager and if still dissatisfied, appeal to SOIGA. *See* 37 Pa. Code § 93.9; DC-ADM 804; *Spruill*, 372 F.3d at 232.

It is undisputed that Plaintiff filed Grievance No. 1053112 on September 16, 2023, and complained of an assault by Fritz and others. (ECF No. 120 ¶ 3; ECF No. 132 at 2 ¶ 3.) The parties also agree that Plaintiff appealed the denial of this grievance to the facility, which upheld the initial denial. (ECF No. 120 ¶ 4; ECF No. 132 at 2 ¶ 4.) Further, Plaintiff admits that he did not pursue an appeal to SOIGA. (*Id.*) Thus, it is undisputed that Plaintiff did not exhaust his administrative remedies with regard to this grievance.

Plaintiff does not argue that the administrative process was unavailable to him. In fact, other than admitting that he did not pursue an appeal to SOIGA, Plaintiff does not address in any fashion Fritz's argument that the excessive force claim is barred by his failure to exhaust his administrative remedies.[9] That is fatal to his claim. "Courts within the Third Circuit have routinely held that a non-movant's failure to offer any response to an opposing party's summary judgment arguments constitutes an abandonment of claims left undefended." *Diodato v. Wells*

---

[9] Plaintiff opposes Fritz's argument with regard to failure to exhaust another grievance (No. 1054353), (ECF No. 132 at 4), but does not respond to the argument with regard to Grievance No. 1053112.

*Fargo Ins. Servs., USA*, 44 F. Supp. 3d 541, 556 (M.D. Pa. 2014) (collecting cases). Accordingly, as Petitioner has abandoned this claim, Fritz is entitled to summary judgment in his favor with respect to Plaintiff's excessive force claim.

### 2. Conditions of Confinement

Fritz also argues that he is entitled to summary judgment on Plaintiff's conditions of confinement claim because Plaintiff failed to exhaust his administrative remedies. (ECF No. 119 at 3-6.) It is undisputed that Plaintiff did not exhaust this claim because he failed to appeal the initial denial of Grievance No. 1054353 to the facility manager. (ECF No. 120 ¶ 7; ECF No. 132 at 2 ¶ 7.)

Plaintiff does not argue that the administrative process was unavailable to him. Rather, he argues that he was not required to appeal the denial because prison authorities failed to timely respond to the grievance. (ECF No. 132 at 4.)[10]

While the Court of Appeals has held that a prison may render its administrative remedies unavailable when it fails to timely respond to a grievance, *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d. Cir. 2016), that did not occur here. As the record reflects, Plaintiff filed Grievance No. 1054353 on September 28, 2023. (ECF No. 121-3 at 3.) Per DC-ADM 804 § 1.C.5.g., a response shall be provided to the inmate within 15 working days. An extension of ten additional working days may be requested if the investigation of the grievance is ongoing. *Id.* § 1.C.5.h. On October 13, 2023, within the initial 15-working-day period, the facility grievance coordinator issued a notice of an extension of ten additional working days to properly investigate and respond to the grievance. (ECF No. 121-3 at 2.) The response was then issued on October

---

[10] Plaintiff also asserts that because the signature on the response was not that of a grievance coordinator, the response is "legally null." (ECF No. 132 at 4.) He provides no legal authority to support this argument.

25, 2020, 19 working days after the submission of the grievance. (*Id.* at 1.) Thus, it is uncontroverted that the response was timely. Thereafter, Plaintiff did not appeal the initial denial to the facility manager.

In short, because Plaintiff failed to exhaust his administrative remedies, Fritz is entitled to summary judgment on the conditions of confinement claim.

## V.     Conclusion

For these reasons, the motions for summary judgment filed by McDuffie (ECF No. 115) and Fritz (ECF No. 118) will be granted.

Appropriate orders follow.


Dated:  March 3, 2026                                    BY THE COURT:

                                                         /s/ Patricia L. Dodge
                                                         PATRICIA L. DODGE
                                                         UNITED STATES MAGISTRATE JUDGE

14